IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS,<br><br>*Plaintiff*<br><br>vs.<br><br>HARVARD PILGRIM HEALTH CARE, INC.,<br><br>*Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics, the Plaintiff herein (the "Plaintiff" or "Genesis"), who files the following Complaint against Defendant Harvard Pilgrim Health Care, Inc. (the "Defendant" or "Harvard Pilgrim"). In support thereof, Plaintiff would respectfully show unto the Court as follows:

I.

NATURE OF THE CASE

1. This is predominantly a breach of contract action for laboratory testing services rendered upon specimens submitted by medical service providers on behalf of multiple patients insured by the Defendant. Plaintiff will be seeking actual damages in the amount of not less than $139,331.00, plus interest, and costs of suit, including attorney's fees.

2. As a result of Defendant's refusal and failure to abide by its obligations, as well as its breach of the duties of good faith and fair dealing that were owed, the Plaintiff was compelled to bring this matter before the Court, seeking substantial damages incurred by it as a proximate result of the Defendant's actions and/or omissions.

1

II.

PARTIES

3. Plaintiff is a New Jersey limited liability company. At the time of the events made the subject matter of this litigation, it held a CLIA certified medical laboratory testing license issued by the Commonwealth of Pennsylvania, and it maintained its principal place of business at 900 Town Center Drive, Suite H50, Langhorne, Pennsylvania 19047. At all relevant times, Plaintiff was an out-of-network provider of laboratory testing services to Defendant's insureds, members, and /or subscribers.

4. Defendant Harvard Pilgrim Health Care, Inc. is a domestic corporation authorized to conduct business in the Commonwealth of Massachusetts. Defendant may be served with process by and through its officers and/or agent for service who may be found at its principal place of business, at 1 Wellness Way, Canton, Massachusetts 02021.

III.

JURISDICTION and VENUE

5. The Court has subject matter jurisdiction herein by virtue of 28 U.S.C. §1332(a)(1), as well as 28 U.S.C. §1367.

6. Personal jurisdiction lies herein in accordance with Fed. R. Civ. P. 4 and *Mass. General Laws, ch.223A, § 3(a)*.

7. Venue is proper herein pursuant to 28 U.S.C. § 1391(b) because the Defendant maintains its principal place of business within the boundaries of the Commonwealth of Massachusetts.

8. To the extent any of Plaintiff's claims asserted herein could be deemed untimely – and Plaintiff specifically denies same – any statute of limitation applicable herein would have been

tolled in this case due to the non-accrual of claims. The Defendants failed to deny a number of Plaintiff's claims at issue in this case, and further, on information and belief, it never closed those claim files. As a result, Plaintiff's claims never had an opportunity to accrue.

IV.

FACTUAL BACKGROUND

9. At all times material hereto, the Plaintiff was an out-of-network provider of laboratory testing services to several hundred patients who were subscribers to the Defendant. The Plaintiff operated a CLIA licensed medical testing laboratory based in Langhorne, Pennsylvania. The Plaintiff performed clinical laboratory, pharmacy, genetics, addiction rehabilitation, and COVID-19 testing services upon specimens collected by various medical service providers and thereafter referred via requisitions for laboratory testing services to the Plaintiff, on behalf of Defendant's insureds/subscribers/members, for numerous patients located throughout the United States, including those residing in and/or receiving treatment in the Commonwealth of Pennsylvania (the "Laboratory Testing Services"). Those Laboratory Testing Services were normally billed to a patient's third-party insurer (such as the Defendant), to Medicare, or Medicaid, to a medical service provider, or directly to the patient.

10. The Laboratory Testing Services at issue in this lawsuit were solicited from the Plaintiff via requisitions for services that were forwarded to the Plaintiff by multiple medical service providers on behalf of patients who were insured by and/or had their claims serviced by the Defendant.

11. The requisitions soliciting Laboratory Testing Services from the Plaintiff contained assignments of payment benefits, which had the effect of creating contractual obligations on the part of the Defendant to pay for the Laboratory Testing Services that were to be rendered by the

Plaintiff to Defendant's insureds/members/subscribers. As an example, the requisitions for Laboratory Testing Services signed by Defendant's insureds generally contained the following assignment of payment benefits in favor of Genesis:

> I hereby certify that I am voluntarily providing a fresh and unadultered urine specimen for analytical testing and the information provided on this form and on the label affixed to the specimen bottle is accurate. I hereby authorize Genesis Diagnostics to release the results of this testing to the treating physician or facility or my employer. ***I hereby assign all rights and benefits under my health plan and direct payments be made to Genesis Diagnostics or its assigned affiliates for laboratory services furnished to me by Genesis Diagnostics. I irrevocably designate, authorize and appoint Genesis Diagnostics or its assigned affiliates as my true and lawful attorney-in-fact for the purpose of submitting my claims and pursuing any request, disclosure, appeal, litigation or other remedies in accordance with the benefits and rights under my health plan and in accordance with any federal or state laws.*** If my health plan falls to abide by my authorization and makes payment directly to me, l agree to endorse the insurance check and forward it to Genesis Diagnostics immediately upon receipt. I hereby authorize Genesis Diagnostics or its assigned affiliates to contact me for billing or payment purposes by phone, text message, or email with the contact information that I have provided to Genesis Diagnostics, in compliance with federal and state laws. (emphasis added).

12.     Attached to this complaint and incorporated herein for all purposes as Exhibit "1," is a HIPAA redacted spreadsheet setting forth the number and identification of patients who were rendered Laboratory Testing Services by Genesis, the dates services were rendered to those patients, the respective amounts invoiced for services rendered to each of those insureds, claim numbers, and the ascension numbers for the specimens tested by Genesis.[1]

---

[1] Under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Genesis is required to protect sensitive health information from disclosure absent a patient's consent. A general description of the protected health information to be protected may be found under 45 C.F.R. §160.103. It generally includes, but is not limited to, health information, including demographic information, relating to: past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual, which identifies or reasonably could be expected to identify the individual. It also includes, but is not limited to: medical bills; claims forms; charges sheets; medical records; medical charts; test results; notes; dictation; invoices; itemized billing statements; remittance advice forms; explanation of benefits; checks; notices; and requests; and includes all notes, summaries, compilations, extracts, abstracts, or oral communications that are based on or derived from patient health information.

13. The insurance policies in question, which create the contractual obligation(s) on the part of the Defendant to directly pay benefits to the Plaintiff, are the policies of insurance issued by the Defendant to its insureds listed in the attached Exhibit 1, and are in the possession of and maintained by the Defendant. Those policies of insurance were not produced by Defendant to the Plaintiff.

14. Each of the requisition(s) for service submitted to Genesis on behalf of the insureds reflected in Exhibit 1 contained assignment(s) of benefits as discussed above, which establishes the number of assignment(s) at issue in this litigation. As noted in paragraph 11 above, the terms of the assignments reflect the transfer of contractual rights arising under each insured's health plan from those patients in favor of the Plaintiff with respect to the Defendant's obligations to make payment of benefits for services rendered to each of those insureds.

15. Under the Timely Payment Provisions of Chapter 141 of the Acts of 2000, the Defendant was obligated to promptly pay for the Laboratory Testing Services within forty-five (45) days of receipt of Plaintiff's claims, in accordance with Defendant's payment policies and reimbursement rates.

16. All services covered by an insured's plan, including Laboratory Testing Services rendered to those insureds reflected in Exhibit 1, were to be paid at the usual or customary rate normally paid by the Defendant in its business practice, and those payments were to be made promptly by the Defendant within 45 days of receipt of Genesis's claims.

---

HIPAA protected information also includes individually identifiable information referred to and identified in 45 C.F.R. § 164.514(b). It includes, but is not limited to: names; addresses; names of relatives; names of employers; all elements of dates; telephone numbers; fax numbers; electronic mail addresses; Social Security numbers; medical record numbers; health plan beneficiary numbers; account numbers; certificate/license numbers; Internet Protocol (IP) address numbers; biometric identifiers; full face photographic images; or any other unique identifying numbers, characteristics, or codes of any patient.

17. While the Defendant did pay on several claims submitted by the Plaintiff, as reflected in the attached Exhibit 1, multiple claims arising under Plaintiff's services, be they blood & wellness, COVID-19, or toxicology testing, were not responded to by the Defendant.

18. Each of the insureds listed in Exhibit 1 had previously entered into health insurance plans administered by the Defendant which provided coverage for the Laboratory Testing Services provided by Genesis. The reimbursement rates arising under those plans for out-of-network providers such as Genesis are subject to the Defendant's usual and customary reimbursement policies. Those policies would generally adhere to one or more of the following methodologies utilized by payors such as the Defendant for reimbursement of claims:

- **CMS.** The established and published rates and reimbursement methodologies used by The U.S. Centers for Medicare and Medicaid Services ("CMS") to pay for specific health care services provided to Medicare enrollees ("CMS rates"). Benefit plans that use this benchmark use a percentage of the CMS rates for the same or similar service.

- **FAIR Health**. The rate recommended by FAIR Health's database. FAIR Health is a not-for-profit company, that collects data for and manages the nation's largest database of privately billed health insurance claims. FAIR Health organizes the claims data they receive by procedure code and geographic area. FAIR Health also organizes data into percentiles that reflect the percent of fees billed or allowed. For example, in a distribution of 100 data points of fees billed, the 70th percentile is the value in the 70th position in the lowest-to-highest array of values, meaning that 70 percent of the values are equal to or lower than the 70th percentile value and 30 percent are equal to or higher than the 70th percentile value.

- **Viant.** A rate recommended by Viant, an independent third-party vendor that collects and maintains a database of health insurance claims for facilities, then applies proprietary logic to arrive at a recommended rate. Viant also organizes its data by percentiles.

- **Negotiated Rate.** The rate an independent third-party vendor negotiates with an out-of-network provider after the service was provided. Whether a negotiated rate is available depends on the circumstances and applicable member benefit plan.

19. In furtherance of the requisitions executed by Defendant's insureds, Plaintiff provided Laboratory Testing Services to Defendant's members/subscribers/insureds listed in

Exhibit 1 generally from 2016 through 2021. After the provision of those Laboratory Testing Services, in furtherance of the Defendant's policies and procedures for submitting claims for services rendered by laboratories, Genesis timely tendered multiple claims to the Defendant for payment of the Laboratory Testing Services rendered to each of the multitude of patients insured by the Defendant that are listed in the attached Exhibit 1.

20.     Genesis provided its Laboratory Testing Services to Defendant's insureds/members/subscribers with the expectation of being compensated by the Defendant pursuant to the Defendant's agreements with its insureds/members/subscribers, and in furtherance of its policies and procedures regarding reimbursement of claims. Moreover, Genesis expected the Defendant to comply with its prompt payment obligations that arose under Massachusetts law. However, even though claims for payment of services were timely tendered by Genesis, the Defendant failed to pay valid claims for the out-of-network services connected with the insureds listed in the attached Exhibit 1.

21.     As a result of Defendant's failure to abide by its payment obligations, as well as its failure to abide by the duties of good faith and fair dealing that were owed to Genesis, and as evidenced by the claims reflected in the attached Exhibit 1, Plaintiff was damaged in the principal amount of not less than one hundred thirty-nine thousand three hundred thirty-one and 00/100 ($139,332.00) dollars, excluding interest, attorney's fees, and costs of court.

22.     Defendant's failure to properly process and pay Plaintiff for the Laboratory Testing Services it rendered to Defendant's insureds/subscribers/members listed in the attached Exhibit 1 was entirely groundless, and deprived Genesis of over one hundred thousand dollars to which it is rightfully entitled to receive, thereby constituting a material breach of Defendant's payment obligations.

V.

CAUSES OF ACTION

**A.     COUNT 1 – Breach of Contract.**

23.     Plaintiff realleges and incorporates herein, as if fully set forth at length, each of the factual recitations set forth in paragraphs 1 through 22 above.

24.     Plaintiff was an assignee of benefits for all the insureds/claimants of the policies of insurance issued and administered by the Defendant, and thus occupies the same legal position as the insureds/claimants listed in the attached Exhibit 1 with respect to the direct payment of benefits associated with Plaintiff's provision of Laboratory Testing Services to Defendant's insureds. The Defendant has possession of those contracts, and had actual control over payment for those out-of-network services.

25.     The assignment(s) of benefits created an obligation on the part of the Defendant to promptly pay Plaintiff for the Laboratory Testing Services rendered by Genesis to the Defendant's insureds/subscribers/members listed in Exhibit 1. Those assignments of benefits conferred contractual rights upon Genesis which arose under each insured's health insurance plan administered and controlled by the Defendant, and which were to be paid in furtherance of Defendant's reimbursement policies and procedures under the time lines proscribed by Pennsylvania law. Accordingly, as a medical service provider and derivative assignee of benefits from plan beneficiaries, the Plaintiff has clear standing to pursue its claims for breach of contract associated with Defendant's failure to pay for Laboratory Testing Services rendered by Genesis.

26.     Exhibit 1 reflects that Genesis provided Laboratory Testing Services upon several hundred specimens submitted on behalf of Defendant's insureds listed in the attached Exhibit 1.

The dates of Genesis's services generally ran from 2016 through 2021. As further reflected in Exhibit 1, claims for each of those services were directly invoiced by Genesis to the Defendant, and the total amount of those billed services equaled $139,331.00.

27.     Under the prompt payment laws for the Commonwealth of Massachusetts, Plaintiff's out-of-network claims were to be paid within 45 days of receipt of Genesis's claims, in furtherance of the reimbursement rates established under the Defendant's policies and procedures. While Defendant paid on multiple claims submitted by the Plaintiff, it failed to pay Plaintiff's claims made the subject matter of this lawsuit, leaving a balance owed of $139,331.00.

28.     Plaintiff performed all of its obligations that arose as a result of the requisitions for Laboratory Testing Services that were tendered to Genesis by medical service providers on behalf of Defendant's insureds. Moreover, given the assignments of benefits, contractual rights to pay for services rendered flowed therefrom, thereby establishing the existence of contractual obligations on the part of the Defendant to pay for Genesis's services. Defendant's failure to adhere to its reimbursement policies and pay for those services breached its prompt payment obligations that were owed to Genesis, thereby proximately causing damages resulting from said breach, which as reflected in Exhibit 1 attached hereto, equals the principal amount of $139,331.00.

29.     Plaintiff was, among other things, entitled to have its claims for services rendered to Defendant's insureds processed and paid promptly in furtherance of each insured's health insurance policy administered by the Defendant. However, the Defendant failed to comply with those payment obligations which arose under Massachusetts law and its own reimbursement policies, thereby breaching its duty of good faith and fair dealing in this matter, and it further failed to provide written notice of the denials of Plaintiff's claims, if any.

30. Because of Defendant's myriad breaches of its obligations to promptly pay for Genesis's Laboratory Testing Services, Plaintiff has been deprived of thousands of dollars to which it is contractually (and otherwise) entitled. Defendant's failure to pay Plaintiff as required under the health insurance plans for each of the insureds listed in the attached Exhibit 1, and the Defendant's own reimbursement policies (as well as applicable law), has proximately caused actual damages to Plaintiff in the amount of not less than $139,331.00.

      B.      **COUNT 2 – Equitable or Promissory Estoppel.**

31. Plaintiff realleges and incorporates herein, as if fully set forth at length, each of the factual recitations set forth in paragraphs 1 through 30 above.

32. Over the course of several years, the Plaintiff submitted many claims to the Defendant regarding Laboratory Testing Services rendered to the patients listed in Exhibit 1. Medical service providers for Defendant's insureds requested those services on behalf of those insureds, and represented to the Plaintiff that those patients/insureds were all covered by policies of insurance issued by the Defendant, and that the Defendant would pay for the services to be rendered by the Plaintiff to Defendant's insureds.

33. The Defendant, by virtue of its course of conduct, did pay on a number of claims submitted by the Plaintiff. However, it did not pay and/or underpaid a large percentage of claims submitted by the Plaintiff over the course of several years. Defendant's course of conduct constituted a representation to the Plaintiff that it would continue to pay for Laboratory Testing Services rendered by Plaintiff. The Plaintiff relied upon the representations and course of conduct between Defendant and Plaintiff. Plaintiff's reliance was reasonable and justified.

34. As a result, Defendant is precluded, both at law and in equity, from asserting rights which might have existed against Plaintiff because Plaintiff in good faith relied upon Defendant's

representations and the parties' course of dealings. Plaintiff was induced to adversely change its position because Plaintiff provided Laboratory Testing Services to Defendant's subscribers and/or members under the belief that it would be compensated by Defendant for those services.

35. Moreover, Defendant is precluded, both at law and in equity, from asserting rights which might have existed against Plaintiff because Plaintiff in good faith relied upon and expected Defendant to comply with its payment obligations.

36. As a result of failing to pay on a significant number of claims submitted during the years of 2016 through 2021, Defendant has demonstrated that that it did not intend to reimburse Plaintiff for providing Laboratory Testing Services for Defendant's subscribers and/or members in accordance with Defendant's own reimbursement standards and protocols.

37. Defendant is precluded from repudiating its payment and other obligations because to do so would be violative of the demands of justice and good conscience, whether such failure arose by silence or omission where one has a duty to speak or act.

38. By failing to pay Plaintiff the usual, customary, and reasonable charges for its professional services, in accordance with Defendant's own reimbursement standards and protocols, Defendant breached its obligation to reimburse Plaintiff for providing testing services for Defendant's subscribers and/or members. Accordingly, Defendant has proximately caused damages to Plaintiff in an amount to be determined by the trier of fact at trial.

  **C.** **COUNT 3 – Alternative Claim for Quantum Meruit // Unjust Enrichment.**

39. Plaintiff realleges and incorporates herein, as if fully set forth at length, each of the factual recitations set forth in paragraphs 1 through 39 above.

40. Plaintiff conferred a valuable benefit upon the Defendant by, without limitation, delivering Laboratory Testing Services to Defendant's insureds, in as yet unpaid claims. Plaintiff

11

in fact performed the Laboratory Testing Services with the reasonable expectation that it would be compensated for those services. Defendant's benefit in this matter arose from its acceptance of premiums paid by its insureds, in exchange for the provision of insurance coverage and medical services arising therefrom, and the payment of claims incurred by its insureds regarding those medical services, or as in this case, by their assignee.

41. As a result of the course of conduct and business between Plaintiff and Defendant over the course of five (5) plus years, the Defendant knew of, and appreciated, the benefit received on behalf of Genesis. The Plaintiff did not confer these benefits officiously.

42. Defendant has enriched itself at Plaintiff's expense by failing to compensate Plaintiff for providing Laboratory Testing Services to Defendant's subscribers and/or members.

43. It is against equity and good conscience to permit Defendant to retain the money it intentionally and wrongfully failed to pay to Plaintiff.

44. Under the circumstances alleged herein, it would be unjust for Defendant to retain the benefit it received without compensating Plaintiff, as the assignee of Defendant's beneficiaries reflected in the attached Exhibit 1, in an equivalent amount. The Defendant has not compensated Plaintiff in an amount equivalent to the benefit Genesis conferred upon Defendant. The Defendant has therefore unjustly enriched itself at Plaintiff's expense.

45. As a result of Defendant's receipt and acceptance of the payment of premiums by its insureds, the assignment of their contractual rights arising under their plans to the Plaintiff assignee, the services performed by Genesis and conferred upon Defendant's insureds under coverage provided by their plans, Defendant's knowledge of and acceptance of services over the course of more than 5 years, and Defendant's failure to pay the outstanding balance owed for the Laboratory Testing Services rendered to the patients listed in the attached Exhibit 1, under

principles of equity, Plaintiff is entitled to recover from Defendant the reasonable value of those services rendered. The reasonable value of the Laboratory Testing Services provided by Plaintiff and accepted by the Defendant is $139,331.00.

46. Plaintiff is therefore entitled to recover all funds it is owed for providing Laboratory Testing Services to the patients listed in Exhibit 1, which Defendant wrongfully withheld.

47. By reason of the unjust enrichment of Defendant at Plaintiff's expense, Plaintiff is entitled to judgment against Defendant in the amount of not less than $139,331.00, plus interest.

VI.

DAMAGES AND ATTORNEY'S FEES

48. Plaintiff realleges and incorporates herein, as if fully set forth at length, each of the factual recitations and allegations set forth in paragraphs 1 through 47 above.

49. Plaintiff requests all damages, compensatory, direct, general, and/or special, legal, and equitable, as allowed by law; in excess of the minimum jurisdictional limits of the Court. The Plaintiff also requests judgment for all other relief to which it may show itself entitled to receive.

50. To the extent allowed by either contract, statute, common law, or equity, Plaintiff additionally seeks to recover its reasonable and necessary attorney's fees incurred by it with respect to the claims and/or defenses asserted in this lawsuit.

VII.

PRE – AND POST-JUDGMENT INTEREST

51. Plaintiff hereby pleads for pre-judgment interest at the maximum rate allowed by law. Plaintiff further pleads for post-judgment interest at the maximum rate allowed by law.

## VIII.

## COSTS OF COURT and OUT-OF-POCKET EXPENSES

52. Plaintiff pleads for all costs of court and out-of-pocket expenses incurred during its prosecution of the instant lawsuit.

## IX.

## JURY DEMAND

52. In furtherance of Fed. R. Civ. P. 38, Plaintiff hereby demands a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics prays for judgment against Defendant Harvard Pilgrim Health Care, Inc., and requests the Court to award it the following damages in this case:

(a) compensatory, direct, or actual damages in the amount of not less than $139,331.00;

(b) all legal, equitable, consequential, and/or incidental damages as determined by the trier of fact;

(c) attorney's fees, costs of court, and out-of-pocket expenses;

(d) pre- and post-judgment interest at the highest rate(s) allowed by law; and

(e) all such other and further relief, either at law or in equity, as may be deemed appropriate by the Court.

Respectfully submitted this _____ day of June, 2025.

PIERCE & MANDELL, P.C.

By:   /S/ Thomas E. Kenney
      Thomas E. Kenney (BBO #561590)
      11 Beacon Street, Suite 800
      Boston, MA  02108
      (617) 720-2444  [Telephone]
      (617) 720-3693  [Facsimile]
      tom@piercemandell.com

LAW OFFICE OF DAVID W. GHISALBERT

By:    / S /  D.W. Ghisalbert
David W. Ghisalbert,
*Pro Hac Vice* pending
5907 Bonita Creek
Missouri City, Texas 77459
(713) 808-9697 [telephone]
(713) 893-6942 [facsimile]
dghisalbert@dwglawoffice.com  [email]

COUNSEL FOR PLAINTIFF,
ABIRA MEDICAL LABORATORIES,
LLC d/b/a GENESIS DIAGNOSTICS

# EXHIBIT "1"

| Accession | DOS | Date Of Service | Insurance name | Payer Name | Tax id# | NPI# | Billed Amount |
|---|---|---|---|---|---|---|---|
| 1611220097 | 11/21/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $867.26 |
| 1611110106 | 11/9/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $5,235.00 |
| 1610060555 | 10/4/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,381.00 |
| 1609290096 | 9/18/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $100.00 |
| 1609220172 | 9/15/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $2,196.00 |
| 1609210200 | 9/11/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $1,070.00 |
| 1609120145 | 9/9/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $4,063.00 |
| 1609200230 | 9/8/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $4,396.00 |
| 1609070099 | 9/6/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $245.14 |
| 1609060129 | 9/2/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $2,196.00 |
| 1609010657 | 8/30/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,931.00 |
| 1608310133 | 8/30/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $867.26 |
| 1608200461 | 8/18/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $6,131.00 |
| 1608130340 | 8/11/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $6,131.00 |
| 1608120389 | 8/10/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $6,131.00 |
| 1608110307 | 8/9/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $251.86 |
| 1607160121 | 7/15/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $391.40 |
| 1607080293 | 7/5/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,831.00 |
| 1607080291 | 7/3/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,831.00 |
| 1607080292 | 7/2/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,831.00 |
| 1606280254 | 6/26/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,831.00 |
| 1606280281 | 6/25/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $6,031.00 |
| 1605130056 | 5/12/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $400.00 |
| 1604150190 | 4/13/2016 | 2016 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $4,460.00 |
| 1712160029 | 12/15/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $251.43 |
| 1712160031 | 12/15/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $608.17 |
| 1712010173 | 11/30/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $947.81 |
| 1711210111 | 11/20/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $564.72 |
| 1711150179 | 11/14/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $1,218.58 |
| 1710260067 | 10/25/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $20.00 |
| 1709070045 | 9/6/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $600.00 |
| 1709010103 | 8/31/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $1,400.00 |
| 1708230008 | 8/22/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $268.83 |
| 1707130078 | 7/12/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,181.00 |
| 1707070079 | 7/6/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,181.00 |
| 1706200002 | 6/19/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $272.95 |
| 1705240005 | 5/23/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,095.91 |
| 1705120045 | 5/11/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,181.00 |
| 1703230133 | 3/22/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,181.00 |
| 1703300036 | 3/22/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $500.00 |
| 1703220190 | 3/21/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,085.40 |
| 1703300023 | 3/20/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $500.00 |
| 1703300057 | 3/13/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $500.00 |
| 1703300084 | 3/10/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $500.00 |
| 1703200358 | 3/6/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $500.00 |
| 1703200015 | 3/5/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $500.00 |
| 1703200055 | 3/3/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $500.00 |
| 1703030067 | 3/2/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,181.00 |
| 1703200018 | 3/1/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $500.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1703130152 | | 2/27/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $500.00 |
| 1703110211 | | 2/24/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $500.00 |
| 1703110157 | | 2/22/2017 | 2017 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $500.00 |
| 1811080235 | | 11/7/2018 | 2018 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $1,616.00 |
| 1811020051 | | 11/1/2018 | 2018 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,855.00 |
| 1811020101 | | 11/1/2018 | 2018 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $1,914.00 |
| 1810060035 | | 10/5/2018 | 2018 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,421.09 |
| 1804260073 | | 4/25/2018 | 2018 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $460.74 |
| 1803130027 | | 3/12/2018 | 2018 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $3,005.06 |
| 1802200283 | | 2/19/2018 | 2018 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $1,450.00 |
| 1802090164 | | 2/8/2018 | 2018 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $1,450.00 |
| 1801270085 | | 1/26/2018 | 2018 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $478.14 |
| 1902090042 | | 2/7/2019 | 2019 | HARVARD PILGRIM HEALTH CARE | HARVARD PILGRIM HEALTH CARE | 471479810 | 1770984239 | $248.00 |
| 2101040105 | | 12/31/2020 | 2020 | Harvard Pilgrim Health Plan | Harvard Pilgrim Health Plan | 471479810 | 1770984239 | $200.00 |
| 2011116061 | | 11/10/2020 | 2020 | Harvard Pilgrim Health Plan | Harvard Pilgrim Health Plan | 471479810 | 1770984239 | $200.00 |
| 2009083070 | | 09/03/2020 | 2020 | Harvard Pilgrim Health Plan | Harvard Pilgrim Health Plan | 471479810 | 1770984239 | $200.00 |
| 2008030835 | | 07/31/2020 | 2020 | Harvard Pilgrim Health Plan | Harvard Pilgrim Health Plan | 471479810 | 1770984239 | $200.00 |
| 2006301813 | | 06/29/2020 | 2020 | Harvard Pilgrim Health Plan | Harvard Pilgrim Health Plan | 471479810 | 1770984239 | $11,695.00 |
| 1011914765 | | 02/01/2021 | 2021 | Harvard Pilgrim Health Plan | Harvard Pilgrim Health Plan | 471479810 | 1770984239 | $200.00 |
| 1012610072 | | 01/25/2021 | 2021 | Harvard Pilgrim Health Plan | Harvard Pilgrim Health Plan | 471479810 | 1770984239 | $200.00 |
| 1012300638 | | 01/21/2021 | 2021 | Harvard Pilgrim Health Plan | Harvard Pilgrim Health Plan | 471479810 | 1770984239 | $200.00 |
| 1012010231 | | 01/19/2021 | 2021 | Harvard Pilgrim Health Plan | Harvard Pilgrim Health Plan | 471479810 | 1770984239 | $200.00 |
| 1011509267 | | 01/14/2021 | 2021 | Harvard Pilgrim Health Plan | Harvard Pilgrim Health Plan | 471479810 | 1770984239 | $200.00 |
| 1010805371 | | 01/06/2021 | 2021 | Harvard Pilgrim Health Plan | Harvard Pilgrim Health Plan | 471479810 | 1770984239 | $200.00 |
| 1010505458 | | 01/04/2021 | 2021 | Harvard Pilgrim Health Plan | Harvard Pilgrim Health Plan | 471479810 | 1770984239 | $200.00 |
| | | | | TOTAL | | | | $139,331 |